UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VALERIE BOSE,

                          Plaintiff,                      REPORT AND
                                                                               RECOMMENDATION
                      -against-                    07-CV-2431 (SJF)

CITY OF NEW YORK, CITY OF NEW YORK
DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT, CITY OF NEW YORK
DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT DIVISION OF CODE
ENFORCEMENT, 1254 CENTRAL ASSOCIATES,
LLC., and LILMOR MANAGEMENT, LLC.,

                          Defendants.
-------------------------------------------------------------X
Gold, S., *United States Magistrate Judge*:

       Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of her civil rights. More specifically, plaintiff alleges that the City of New York, the New York City Department of Housing Preservation and Development ("HPD"), and the New York City Department of Housing Preservation and Development Division of Code Enforcement ("Code Enforcement") (collectively, the "City Defendants") failed to comply with their obligations pursuant to federal law and regulations, resulting in plaintiff's eviction from her residence and lead poisoning in her children. The City Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The City Defendants argue that 1) plaintiff's complaint is vague and conclusory and fails to meet the requirements of Federal Rule of Civil Procedure 8, and in particular, the complaint fails to allege which federal rights were violated and 2) even if plaintiff's complaint is construed as alleging violations of the Housing Act of 1937, 42 U.S.C. §§ 1437f *et seq.*, and the Housing Quality

Standards ("HQS") set forth in 24 C.F.R. § 982.401 *et seq.*, the statute and regulations do not provide plaintiff with a cognizable right that can be redressed under § 1983.

The Honorable Sandra J. Feuerstein has referred the City Defendants' motion to me for a report and recommendation. Docket Entry dated Oct. 3, 2007. For the reasons stated below, I recommend that the motion be granted.[1]

## BACKGROUND

Plaintiff has resided with her four children in "Section 8" housing at 1256 Central Avenue, Far Rockaway, New York since April, 1999.[2] Am. Compl. ¶¶ 6, 7.[3] Plaintiff's

---

[1] Plaintiff's brief in opposition to defendants' motion notes that a temporary guardian was appointed for Valerie Bose in a state court proceeding due to her mental incapacity. Pl. Opp. 10 n.13. The state-court guardianship proceedings are ongoing, *see* Pl. Letter dated Jan. 10, 2008, Docket Entry 34, and no further details concerning plaintiff's mental health have been provided to the court. Plaintiff argues, and the court agrees, that it is not necessary at this juncture to amend the complaint to include the temporary guardian. Pl. Letter dated Jan. 10, 2008. The court will proceed to rule on the motion for several reasons, despite plaintiff's alleged incompetency. First, the issues raised by defendants' motion are legal and do not require plaintiff's assistance in resisting them. Second, plaintiff is represented by counsel, who necessarily has a fiduciary responsibility to her. Third, appointment of a guardian in this action is discretionary. *See* FED. R. CIV. P. 17(c)(2) ("The court *must* appoint a guardian ad litem . . . to protect a minor or incompetent person who is *unrepresented* in an action) (emphasis added); *see also Ferelli v. River Manor Health Care Center*, 323 F.3d 196, 201-03 (2d Cir. 2003) (recognizing the discretionary nature of an inquiry into a party's mental competence). Finally, the state court guardianship proceedings to date have not resulted in a permanent appointment. For all these reasons, I proceed to the merits of the motion.

[2] For a description of the Section 8 program, see *Jeanty v. Shore Terrace Realty Ass'n*, 2004 WL 1794496, at *1 (S.D.N.Y. Aug. 10, 2004); *Williams v. New York Hous. Auth.*, 1994 WL 323634, at *1 (S.D.N.Y. July 5, 1994). In brief, under the Section 8 program, the rent paid by eligible families is capped at a certain percentage of their income; the federal government pays the difference in the rent due directly to the landlord.

[3] On August 2, 2007, plaintiff moved to withdraw all claims against defendants 154 Central Associates, LLC and Lilmor Management, LLC. Docket Entry 12. On August 29, 2007, plaintiff filed a Second Amended Complaint. Docket Entries 14, 15. There is no substantive difference in the claims and factual allegations between the First and Second Amended

residence is owned by 1254 Central Associates, LLC ("Central Associates") and managed by Lilmor Management, LLC ("Lilmor"). *Id.* ¶ 1. Defendant HPD is a local public housing authority ("PHA") in New York City that administers Section 8 housing. Def. Mem. 5-6.

Plaintiff and Central Associates have had an antagonistic relationship with each other over the years. Plaintiff alleges that Central Associates has been cited by defendant HPD for thirty-nine housing violations over the years, creating hazardous health conditions for plaintiff and her family. Am. Compl. ¶¶ 22-34, 52. Several of the violations involved lead paint. *Id.* ¶¶ 24-28. In November, 2005, blood tests for plaintiff's youngest children, Zanaya and Arianna, showed lead poisoning. *Id*. ¶ 12. Plaintiff's youngest child, Arianna, has lived at 1256 Central Avenue her entire life; plaintiff's second youngest child, Zanaya, has lived there since she was one month old. *Id*. ¶¶ 9-11.

In 2005 and 2006, Central Associates filed petitions against plaintiff for non-payment of rent. *Id.* ¶¶ 19, 36. Pursuant to a Stipulation of Settlement, the 2005 petition was dismissed. *Id.* ¶ 36. The settlement granted plaintiff a rent abatement for the entire amount that was owed. *Id.*; *see also* Pl. Opp. 6. In addition, the settlement required Central Associates to repair the violations noted by HPD at its last inspection. Am. Compl. ¶ 36; *see also* Pl. Opp. 6. Shortly thereafter, Central Associates filed a second petition ("2006 petition") for non-payment, alleging

---

Complaints. The Second Amended Complaint, however, eliminates 1254 Central Associates, LLC and Lilmor Management, LLC as defendants and adds as defendants Alphonso Jackson, Secretary of the United States Department of Housing and Urban Development, and Sean Moss, Regional Director of the United States Department of Housing and Urban Development. In its motion to dismiss, the City Defendants address their arguments to the First Amended Complaint. Accordingly, and because there is no substantive difference between the First and Second Amended Complaints, I address the First Amended Complaint in this Report and Recommendation.

that plaintiff had again failed to pay rent. *Id.* ¶ 19. Plaintiff argued that she had withheld her rent payments because Central Associates failed to correct the HPD violations. *Id.* ¶ 21; *see also* Pl. Opp. 5. The housing court found in favor of Central Associates, although it awarded plaintiff a small abatement. *Id.* ¶ 70. Additionally, plaintiff was evicted from her residence. Pl. Opp. 13.

On June 15, 2007, plaintiff filed the instant action pursuant to § 1983, seeking compensatory and punitive damages for injuries plaintiff allegedly suffered as a result of the defendants' actions. As of December 10, 2007, the date of the oral argument on this motion, plaintiff had found a new apartment with a different landlord, but she had yet to move into it. Transcript of Oral Argument held on Dec. 10, 2007 ("Tr."), Docket Entry 33, 8. Plaintiff argues that the case is not mooted by plaintiff's change in residence because the claims against the City Defendants for monetary damages for plaintiff's past injuries remain. *Id.*

## DISCUSSION

*Standard on a Motion to Dismiss*

Motions to dismiss address the sufficiency of a plaintiff's complaint, not the sufficiency of a plaintiff's evidence. Thus, in deciding a motion to dismiss, I must accept all allegations in the complaint as true and draw all inferences in favor of the non-moving party. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). For plaintiff to prevail on the pending motion, her complaint need only allege facts which "confer a cognizable right of action." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002). Defendants may prevail only if "the court is satisfied that the complaint cannot state any set of facts that would entitle plaintiff to relief." *Miller*, 321 F.3d at 300.

The Federal Rules of Civil Procedure require only that a complaint set out a "short and

plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8.

Defendants argue that plaintiff's complaint fails to state a claim because it lacks sufficient specificity and because it fails to state a legally cognizable cause of action.

A. *Lack of Specificity*

City Defendants first argue that plaintiff's complaint is deficient because its allegations are broad and conclusory and fail to identify the particular federal law violation underlying plaintiff's § 1983 claim. Although the City Defendants, citing *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987), contend that there is a heightened pleading standard for § 1983 claims, their argument ignores more recent Second Circuit cases, handed down after the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 998 (2002). Citing *Swierkiewicz*, the Second Circuit has more recently held that a § 1983 complaint adequately states a claim when it conforms to Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (*quoting* Fed. R. Civ. P. 8(a)). *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.") (*citing Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974 (2007)). Thus, the City Defendants' argument that plaintiff's complaint fails to meet the general requirements of Rule 8 must be rejected.

Nevertheless, a complaint alleging a deprivation of federal rights pursuant to § 1983 must clearly identify the underlying federal statute that confers the right sued upon. It is "incumbent

5

upon [plaintiffs] to identify with particularity the rights they claimed, since it is impossible to determine whether [a particular statute], as an undifferentiated whole, gives rise to undefined 'rights.'" *Blessing v. Freestone*, 520 U.S. 329, 342, 117 S. Ct. 1353, 1360 (1997); *see also id.* at 346, 117 S. Ct. at 1362. Although plaintiff does not clearly state in her complaint which federal statute gives rise to her § 1983 action, she has subsequently identified specific provisions of particular statutes that she alleges create enforceable individual rights.[4] *See* Pl. Opp. 14 (alleging violations of her civil rights as a result of violations of 1) her property rights in her Section 8 tenancy and 2) her individual rights under the Housing Act, and more specifically, 42 U.S.C. §§ 1437f(o)(8)(A), (B), and (C)).[5] In addition, during oral argument on the pending motion, plaintiff's counsel unequivocally stated that plaintiff's § 1983 claim rested on alleged violations of § 1437f(o)(8). Tr. 8-9. Therefore, while plaintiff's complaint may fall short of *Blessing*'s requirement of specificity, plaintiff has clarified the basis of her claim in her opposition to the

---

[4] In the first paragraph of her complaint, plaintiff alleges that HPD and Code Enforcement violated her civil rights based on their "systemic failures to comply with their obligations pursuant to said federal laws and regulations" and their negligence in failing to act while the property owners allegedly violated plaintiff's rights. Am. Compl. ¶ 1. In the second paragraph, plaintiff states that she "brings a claim for violation of her civil rights pursuant to 42 U.S.C.A. § 1983, against the Defendant City of New York in failing to properly supervise HPD and Code Enforcement so as to prevent those agencies' systemic failures to maintain the goals of Section 8 and that resulted in the violation of Ms. Bose's civil rights as provided herein." *Id.* ¶ 2. The only references to federal laws, other than § 1983, in the complaint are 1) a broad reference to "Section 8 laws and regulations," Am. Compl. ¶ 1, 2) the Housing Quality Standards ("HQS") set forth in Section 8 regulations, *id.* ¶ 3, and 3) violations by non-defendants of the HQS, and specifically 24 C.F.R. §§ 982.401(a)(3), 982.404(a)(1), (2), 982.453(b), 982.311(b), and 982.453(a)(3), *id.* ¶¶ 17, 86, 88, 89.

[5] Although the City Defendants argued that the Lead-Based Paint Poisoning Prevention Act ("LPPPA"), 42 U.S.C. §§ 4821 *et seq.*, does not give rise to an individually enforceable right, plaintiff specifically disavows any reliance on the LPPPA as a basis for her § 1983 action. Pl. Opp. 28. *See also* Tr. 8-9.

6

pending motion and has provided the City Defendants with sufficient notice to defend the case.[6]

*B. Failure to State a Cognizable Claim Pursuant to § 1983*

Second, the City Defendants contend that plaintiff's complaint fails to state a claim upon which relief can be granted because the federal statutes and regulations it relies on do not create federal rights enforceable through a § 1983 action. Under § 1983, an individual may obtain relief for a violation of her constitutional or federal statutory rights. *See Maine v. Thiboutot*, 448 U.S. 1, 4-6, 100 S. Ct. 2502, 2504-05 (1980) (recognizing that § 1983 actions may be brought to enforce rights created by federal statutes in addition to constitutional rights). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing*, 520 U.S. at 340, 117 S. Ct. at 1359. Thus, if a plaintiff alleges a violation of a federal law as the basis of a § 1983 action, the court must determine whether the federal statute involved confers an individual right.

Plaintiff bears the burden of establishing that a statute gives rise to federal rights enforceable through § 1983. *See Blessing*, 520 U.S. at 342, 346, 117 S. Ct. at 1360, 1362; *Williams v. U.S. Dep't of Hous. & Urban Dev.*, 2006 WL 2546536, at *9 (E.D.N.Y. Sept. 1, 2006) (describing it as "axiomatic that '*the plaintiff must demonstrate* that' the statute creates an individual right.") (*quoting City of Rancho Palos Verdes, California v. Abrams*, 544 U.S. 113, 120, 125 S. Ct. 1453, 1458 (2005)).

The Supreme Court has outlined a three-part test for determining whether a statute gives

---

[6] If lack of specificity were the only flaw in plaintiff's complaint, it might be proper, for the reasons stated in the text, to grant plaintiff leave to file a third amended complaint more clearly identifying the federal rights on which her § 1983 claim is based. As discussed below, however, I conclude that plaintiff's claim – even if properly pled – fails as a matter of law. Accordingly, granting leave to amend would be futile.

7

rise to a federal right:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

*Blessing*, 520 U.S. at 340-41, 117 S. Ct. at 1359 (citations omitted). Moreover, "[e]ven if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983. . . . [D]ismissal is proper if Congress 'specifically foreclosed a remedy under § 1983.'" *Id.* at 341, 117 S. Ct at 1360 (*quoting Smith v. Robinson*, 468 U.S. 992, 1005 n.9, 104 S. Ct. 3457, 3464 (1984)). As aptly noted by the Fifth Circuit, the Supreme Court's "approach to § 1983 enforcement of federal statutes has been increasingly restrictive; in the end, very few statutes are held to confer rights enforceable under § 1983." *Johnson v. Hous. Auth. of Jefferson Parish*, 442 F.3d 356, 360 (5th Cir. 2006).

Although the language used in *Blessing* suggests that the first prong of its test is satisfied if it is clear that the plaintiff is an intended beneficiary of the statute, the Supreme Court has since rejected this proposition and narrowed the scope of the first *Blessing* factor. In *Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S. Ct 2268 (2002), the Court recognized that some courts had interpreted *Blessing*

> as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect; something less than what is required for a statute to create rights enforceable directly from the statute itself under an implied private right of action.

*Gonzaga*, 536 U.S. at 283, 122 S. Ct. at 2275. The Court then explicitly rejected

> the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States. Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section.

*Id.* The *Gonzaga* Court held that, for a federal statute to confer an individual right enforceable under § 1983, it must include "explicit rights-creating" language "phrased in terms of the persons benefited." *Id.* at 284, 122 S. Ct. at 2276 (internal quotation marks and citation omitted). As examples of "explicit rights-creating" language, the Court cited Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 because the statutes "are phrased 'with an *unmistakable focus* on the benefited class,'" *id.* at 284, 122 S. Ct. at 2275-76, and pointed out that each declares that "[n]o *person*" shall be subjected to discrimination, *id*. at 284 n.3, 122 S. Ct. at 2275-76 (*quoting* 42 U.S.C. § 2000d; 20 U.S.C. § 1681(a)). In contrast, "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intention to confer rights on a particular class of persons.'" *Alexander v. Sandoval*, 532 U.S. 275, 289, 121 S. Ct. 1511, 1521 (2001) (*quoting California v. Sierra Club*, 451 U.S. 287, 294, 101 S. Ct. 1775, 1779 (1981)). The *Gonzaga* Court concluded that the statute at issue there – the Family Educational Rights and Privacy Act – did not create individual rights because the provision spoke "only in terms of institutional policy and practice, not individual instances of disclosure." *Gonzaga*, 536 U.S. at 288, 122 S. Ct. at 2278.[7]

---

[7] The relevant section of the Family Educational Rights and Privacy Act at issue in *Gonzaga* provides
> No funds shall be made available under any applicable program to

As noted above, plaintiff argues that the Housing Act, and specifically § 1437f(o)(8) of the Housing Act, creates individual federal rights enforceable through § 1983. This section, titled "Inspection of units by PHAs," provides that

> (A) In general
> Except as provided in paragraph (11), for each dwelling unit for which a housing assistance payment contract is established under this subsection, the public housing agency shall inspect the unit before any assistance payment is made to determine whether the dwelling unit meets the housing quality standards under subparagraph (B).
> (B) Housing quality standards
> The housing quality standards under this subparagraph are standards for safe and habitable housing established –
> > (i) by the Secretary for purposes of this subsection; or
> > (ii) by local housing codes or by codes adopted by public housing agencies. . . .
> (C) Inspection
> The determination required under subparagraph (A) shall be made by the public housing agency . . . pursuant to an inspection of the dwelling unit conducted before any assistance payment is made for the unit. Inspections of dwelling units under this subparagraph shall be made before the expiration of the 15-day period beginning upon a request by the resident or landlord to the public housing agency or, in the case of any public housing agency that provides assistance under this subsection on behalf of more than 1250 families, before the expiration of a reasonable period beginning upon such request. The performance of the agency in meeting the 15-day inspection deadline shall be taken into consideration in assessing the performance of the agency.
> (D) Annual inspections
> Each public housing agency providing assistance under this subsection . . . shall make an annual inspection of each assisted dwelling unit during the term of the housing assistance payments

---

> any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein . . . ) of students without the written consent of their parents to any individual, agency, or organization.

20 U.S.C. § 1232g(b)(1).

10

> contract for the unit to determine whether the unit is maintained in accordance with the requirements under subparagraph (A). The agency (or other entity) shall retain the records of the inspection for a reasonable time and shall make the records available upon request to the Secretary, the Inspector General for the Department of Housing and Urban Development, and any auditor conducting an audit under section 1437c(h) of this title.
> (E) Inspection guidelines
> . . .

42 U.S.C. § 1437f(o)(8).

Section 1437f(o)(8) does not by its plain terms create individual rights. As clearly indicated by its title, this provision of the Housing Act regulates inspections by PHAs. Although the broad purpose of the Housing Act may be directed at ensuring adequate, habitable housing for low-income families, *see* 42 U.S.C. § 1437f(a), the focus of § 1437f(o)(8) is on regulating when a local PHA should inspect Section 8 premises. Section 1437f(o)(8) requires the PHA to conduct inspections only a) before a tenant moves into a Section 8 residence, b) within 15 days upon request from a tenant or landlord, and c) annually. Subparagraph (C) specifically notes that the *agency's performance* in meeting the 15-day inspection deadline will be considered in evaluating the *agency*. Other than providing for a tenant to request an inspection, the statute makes no reference to any right of an individual tenant. Similar to the statutes in *Blessing* and *Gonzaga*, the statute here addresses "systemwide performance"[8] and dictates "institutional policy

---

[8] In *Blessing*, the Court held that a
> requirement that a State operate its child support program in 'substantial compliance' with Title IV-D was not intended to benefit individual children and custodial parents, and therefore it does not constitute a federal right. Far from creating an *individual* entitlement to services, the standard is simply a yardstick for the secretary to measure the *systemwide* performance of a State's Title IV-D program.

520 U.S. at 343, 117 S. Ct. at 1361.

11

and practice." *Gonzaga*, 536 U.S. at 288, 122 S. Ct. at 2278. There is no reference to what action should follow if a landlord fails an inspection, or to the consequences if a local PHA fails to comply with its inspection obligations. Certainly, there is nothing in the statute to suggest that a tenant, such as plaintiff, is entitled to relief under such circumstances. Put simply, these provisions of the Housing Act lack any individualized focus; they speak instead to the public housing agency, directing when it must make inspections of Section 8 premises. As in *Gonzaga*, "[t]his focus is two steps removed from the interests of individual[s]" and does not create individual rights enforceable under § 1983. 536 U.S. at 287, 122 S. Ct. at 2277.

In a case similar to this one, the Sixth Circuit held that the LPPPA and the Housing Act, and their implementing regulations, did not create individual rights enforceable through a § 1983 action. *Johnson v. City of Detroit*, 319 F. Supp. 2d 756 (E.D. Mich. 2004), *aff'd* 446 F.3d 614 (6th Cir. 2006). In *City of Detroit*, considering §§ 1437 and 1437f in their entireties, the district court found that

> Nothing in these provisions establishes a clear and unambiguous intent by Congress to create privately enforceable rights under § 1983 to ensure compliance with housing quality standards. The statutory provisions cited by Plaintiff focus on the Secretary of HUD's responsibilities and govern when assistance payments may be made to a public housing agency . . . . The statute confers the authority on HUD to issue housing quality standards for public housing agencies to follow, but it does not contain language which unambiguously creates rights in Section 8 tenants.
> Plaintiff essentially argues that the statutory language creates a federal right for Section 8 tenants in "safe and habitable" housing as reflected in the housing quality standards implemented for public housing agencies to follow. The residents of public housing undoubtedly benefit from the statutory provisions which condition the receipt of federal funds on the requirements to follow the housing quality standards. However, the statute focuses on regulating the Secretary and the public housing agencies through

12

> the Secretary's promulgation of housing quality standards. . . .
> This focus on the entity being regulated cuts against any intent to
> create rights enforceable by individual tenants.

319 F. Supp. 2d at 764. *See also Lindsay v. New York City Hous. Auth.*, 1999 WL 104599, at *5, 9 (E.D.N.Y. Feb. 24, 1999) (finding no private right of action to enforce LPPPA or New York City Health and Administrative Codes); *Rivera v. Village of Spring Valley*, 284 A.D.2d 521, 521-22, 727 N.Y.S.2d 458, 459 (2d Dep't 2001) (finding that the "statutory and regulatory scheme governing Section 8 housing does not give rise to a private right of action against a PHA"); *but see Shade v. Hous. Auth. of New Haven*, 251 F.3d 307, 310 (2d Cir. 2001) (assuming without deciding that plaintiff could bring a § 1983 action alleging a deprivation of a federal right under the LPPPA).

Plaintiff argues, as did the plaintiff in *City of Detroit*, 319 F. Supp. 2d at 764, that "the fact that [§] 1437f addresses rights and duties that flow between the public housing agency and the landlord, does not mean that Congress's intent was not to directly benefit individual families participating in the Section 8 voucher program." Pl. Opp. 18. This argument cannot survive the Supreme Court's conclusion in *Gonzaga,* 536 U.S. at 283, 122 S. Ct. at 2275, that a plaintiff who falls only "within the general zone of interest that the statute is intended to protect" does not satisfy the first *Blessing* factor. *See also City of Detroit*, 319 F. Supp. 2d at 764.

Similarly, plaintiff's reliance on *Jefferson Parish*, 442 F.3d 356, is misplaced. In *Jefferson Parish*, the Fifth Circuit held that § 1437f(o)(2), which entitles Section 8 tenants to an allowance for utilities, conferred individual rights enforceable through a § 1983 action. The Fifth Circuit relied heavily on the pre-*Gonzaga* Supreme Court decision in *Wright v. City of Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 107 S. Ct. 766 (1987), which interpreted a

provision nearly identical to the provision in *Jefferson Parish*. 442 F.3d at 360. The plaintiffs in *Wright* sued on a provision that states "[a] family shall pay as rent . . . 30 percentum of the family's monthly adjusted income. . . ." 42 U.S.C. § 1437a(a). The plaintiffs in *Jefferson Parish* similarly relied on a provision, 42 U.S.C. § 1437f(o)(2), that speaks in terms of the amount of assistance to be provided on behalf of a family. Section 1437f(o)(2) refers to "*famil[ies] receiving tenant-based assistance*" and sets forth the means for calculating "the monthly assistance payment *for the family*." 42 U.S.C. §§ 1437f(o)(2)(A), (B) (emphasis added). *Jefferson Parish* is thus distinguishable from this case because the statute it involved is "phrased in terms of the persons benefited." *Gonzaga*, 536 U.S. at 284, 122 S. Ct. at 2276.

Plaintiff's next argument is that the City Defendants violated her Housing Act rights when they failed to take corrective action against Central Associates and Lilmor after the owner and managing agent failed to correct various violations. As discussed above, however, § 1437f(o)(8) focuses on when PHAs must conduct inspections. There is nothing in this section mandating a PHA to take any particular action against a landlord for habitability violations. Although plaintiff argues that § 1437f(o)(8)(B) "mandates" that defendant HPD not make payments to Central Associates once HPD cited Central Associates for health and safety violations, Pl. Opp. 18, nowhere in this provision does it state or even suggest such a "mandate."

For all these reasons, I find that plaintiff has failed to meet her burden in establishing that § 1437f(o)(8) of the Housing Act confers an individual right enforceable through a § 1983 action.

Plaintiff also invokes her rights under the Housing Quality Standards ("HQS") set forth in 24 C.F.R. § 982.401 *et seq.* Am. Compl. ¶ 87; Pl. Opp. 27. To the extent plaintiff seeks to base her § 1983 claim on these standards, however, her effort fails. First, it is not clear that a federal

14

regulation can provide the basis for asserting a deprivation of a federal right under § 1983. *See Wright*, 479 U.S. at 437, 107 S. Ct. at 777 (O'Connor, J., dissenting); *D.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 513 (2d Cir. 2006); *City of Detroit*, 319 F. Supp. 2d at 770-71 (recognizing a split in authority on this question but following Sixth Circuit precedent that allows for enforceable rights created by federal regulations), *aff'd* 446 F.3d at 628-29 (holding that Sixth Circuit precedent on this issue was no longer viable in light of *Gonzaga* and concluding that the federal regulations promulgated pursuant to the LPPPA and the Housing Act do not confer individual rights). Moreover, the provisions of Part 982 explicitly reject the proposition that the HQS give rise to an individual right. 24 C.F.R. § 982.406 provides:

> Part 982 does not create any right of the family, or any party other than HUD or the PHA, to require enforcement of the HQS requirements by HUD or the PHA, or to assert any claim against HUD or the PHA, for damages, injunction or other relief, for alleged failure to enforce the HQS.

24 C.F.R. § 982.406. *See also Lindsay*, 1999 WL 104599, at *4 (E.D.N.Y. Feb. 24, 1999) (finding that LPPPA met the *Blessing* test and provided plaintiffs with an enforceable federal right, but concluding that 24 C.F.R. § 982.406 explicitly denied plaintiffs a federal remedy); *but see Wilson v. Bucci*, 1998 WL 1073917, at *4-7 (Ct. of Common Pleas of Pa., Allegheny Cty, Oct. 14, 1998) (rejecting the argument that 24 C.F.R. § 982.406 is a bar to a § 1983 action based on violations of LPPPA and inspection provisions of Section 8, 42 U.S.C. 1437f).

## CONCLUSION

For all these reasons, I respectfully recommend that the City Defendants' motion to dismiss be granted. Any objections to this Report and Recommendation must be filed within ten days of this Report and in any event no later than January 29, 2008. Failure to file objections

15

within the specified time may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

/s/
**Steven M. Gold**
**United States Magistrate Judge**

**Brooklyn, New York**
**January 14, 2008**